# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SHELLEY D., | Case No.  1:20-CV-00144-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | **(Dkts.  1, 6 & 19)** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], | |
| Defendant. | |

Pending is Petitioner Shelley D.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 19) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a woman in her sixties who alleges that she is unable to work primarily due to lower back pain.  AR[2] 18; *see also* Pt.'s Br. at 2-4 (Dkt. 19).  On March 29, 2017, Petitioner filed an application for social security disability income ("SSDI"), alleging a disability onset date of December 29, 2016.  AR 13.  The claim was denied initially and on reconsideration and

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit.  Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 18).

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ").  *Id.*  On December 13, 2018, the claim went to a hearing before Administrative Law Judge ("ALJ") David Willis.  *Id.*  On February 6, 2019, the ALJ issued a decision that was unfavorable to Petitioner.  AR 10-22.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1-6.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises three points of error.  First, Petitioner argues that the ALJ did not provide legitimate reasons for rejecting the opinions of Dr. Richard Manos, one of Petitioner's treating physicians.  Pt.'s Br. at 6-10 (Dkt. 19).  Second, Petitioner maintains that the ALJ failed to provide sufficient justification for discrediting Petitioner's symptom testimony.  *Id.* at 10-14.  Finally, Petitioner contends that the ALJ neglected to properly translate Petitioner's postural limitations into the residual functional capacity ("RFC").  *Id.* at 14-16.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

**MEMORANDUM DECISION AND ORDER - 2**

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER - 3**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

**MEMORANDUM DECISION AND ORDER - 4**

awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: degenerative disc disease, obesity, and gastroesophageal reflux disease. AR 15. The ALJ determined that these impairments affected Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner requires work allowing for occasional

use of a cane and would be off-task 5% of the time in an eight-hour workday due to lower back

pain and the need to change position and alleviate discomfort.  AR 18, 20.  Despite these

limitations, the ALJ found that Petitioner could perform a range of sedentary work and could

return to her past work as a case management specialist.  AR 18, 21.  The ALJ, therefore, found

that Petitioner was not disabled.  AR 21.

## DISCUSSION

I.      The Medical Opinion Evidence

     *a.  Dr. Manos's Treatment Records and Medical Source Statement*

Petitioner's first challenge on appeal is to the ALJ's treatment of the opinions of her back

surgeon, Dr. Richard Manos.  Petitioner began seeing Dr. Manos sometime in 2014 or 2015 after

injuring her back lifting boxes at work.  AR 311, 329 (indicating that Dr. Manos treated

Petitioner for approximately two years after her initial back injury).  On August 19, 2015, Dr.

Manos performed a laminectomy and facetectomy to treat Petitioner's back condition.  AR 311.

This surgery improved Petitioner's condition and Petitioner subsequently returned to work as a

facilities manager.  Pt.'s Br. at 3 (Dkt. 18).

On January 5, 2016, Petitioner saw another practitioner in Dr. Manos's office, PA-C

Amanda VanSant, for a post-operation visit.  Petitioner told PA-C VanSant that she was doing

"extremely well" until the end of October 2015, but then developed "severe" low back and

sacroiliac ("SI") joint pain.  AR 318.  Petitioner indicated that this pain was "slowly worsening,"

but had not developed into any leg pain.  Petitioner denied taking any pain medication to

alleviate her symptoms.  In addition, she indicated that she was not interested in going to

physical therapy for treatment.  *Id.*  PA-C VanSant gave Petitioner a corticosteroid injection to

the SI joint.  AR 319.  PA-C VanSant further encouraged Petitioner to avoid "heavy bending,

**MEMORANDUM DECISION AND ORDER - 6**

lifting, and twisting" and to "stand and walk as often as tolerated."  Finally, PA-C VanSant

instructed Petitioner on home exercises and stretches to help her SI pain.  *Id.*

The next time Petitioner returned to Dr. Manos's office was on May 17, 2016.  This time

Petitioner saw Nurse Practitioner Stephanie Mooney.  AR 315-317.  The purpose of the visit was

to obtain a final evaluation for Petitioner's worker's compensation claim.  AR 315.  At the visit,

Petitioner told Nurse Mooney that she was "doing lots of walking and staying active" but was

not able to go camping or hiking as she would like because she was exhausted from working and

normal activities.  *Id.*  Petitioner indicated that she was occasionally taking ibuprofen to sleep

and only taking prescription pain medications on "rare occasions."  *Id.*  Nurse Mooney referred

Petitioner to a physical therapist for a functional capacity evaluation.  AR 317.[3]

Approximately two months later, on July 26, 2016, Petitioner returned to Nurse Mooney

complaining of worsening back pain.  AR  312-313.  Petitioner told Nurse Mooney that she felt a

"pop" in her back two weeks before the visit when she bent down to pick something up.  AR

313.  Petitioner reported that her back pain had been a 10/10 on a daily basis since then, starting

out as a 3/10 in the morning and then increasing throughout the day.  *Id.*  Petitioner stated that

NSAIDs and muscle relaxers had not been helpful in treating her pain.  Nurse Mooney

prescribed Petitioner Norco (a combination of hydrocodone and acetaminophen) and suggested a

follow-up visit in September.  AR 314.  Nurse Mooney also ordered a lumbar MRI, which

occurred on August 9, 2016.  AR 323-324.

The August 9, 2016 MRI showed moderate right neural foraminal narrowing at L4 and

L5 and "other mild degenerative changes."  AR 323.

---

[3] If this functional capacity evaluation occurred, there is not a copy of it in the administrative
record.

**MEMORANDUM DECISION AND ORDER - 7**

On August 23, 2016, Petitioner met with Nurse Mooney to discuss the results of the MRI. AR 309-311.  Prior to this visit, Dr. Manos reviewed the MRI.  AR 311.  Based on that review, Dr. Manos opined that Petitioner's current symptoms were <u>not</u> "related to" to her spine.  Dr. Manos recommended that Petitioner try physical therapy and consider an evaluation of her hips if her pain persisted.  *Id.*

Petitioner continued working and did not see Dr. Manos personally until her next visit to The Spine Institute of Idaho on November 29, 2016.  AR 307.  During this visit, Petitioner reported that she could only sit or stand for two hours due to back and leg pain.  AR 308. Petitioner described the pain as radiating from her back to her hips and groin.  *Id.*  Petitioner indicated that the pain was so bad she did not think she could continue working.  *Id.*  Dr. Manos referred Petitioner to another doctor for injections and suggested that surgery may be appropriate if the injections did not provide relief.  AR 309.  Dr. Manos also prescribed Petitioner tramadol to treat her pain.  *Id.*

On December 8, 2016, Petitioner received a back injection from Dr. Beth Rogers.  AR 302-304.

On January 3, 2017, Petitioner returned to see Dr. Manos for a follow-up visit.  AR 300. Petitioner told Dr. Manos that the injection gave her "good temporary relief" of her right leg pain.  Petitioner reported, however, that she was continuing to have difficulty sitting and standing for more than 15 minutes.  *Id.*  Petitioner asked to discuss surgery.  *Id.*  Dr. Manos conducted a physical evaluation of Petitioner, which showed that she was "able to heel and toe walk," had full motor strength, had "no SI joint or greater trochanteric pain," had "mild pain with external and internal [range of motion] of hips," and had "decreased sensation in [her] right L5

**MEMORANDUM DECISION AND ORDER - 8**

distribution." AR 301.  Leg raising tests showed that Petitioner's right leg was limited to a 45-degree angle by stiffness.  *Id.*

Based on the August MRI and on his conversations with Petitioner, Dr. Manos diagnosed Petitioner with post-laminectomy syndrome and severe right lumbar radiculopathy.  *Id.*  He spoke with Petitioner about her treatment options, including "time, medication, physical therapy, epidural steroid injection, and surgical intervention."  *Id.*  Of these options, Dr. Manos recommended surgery.  *Id.*  Dr. Manos listed several reasons to support a recommendation of surgery, including worsening pain for the last six months, severe impedance of daily activities, and the failure of conservative, nonoperative treatments.  Relevant here, Dr. Manos indicated that physical therapy,[4] epidural steroid injections, medication, and modification of activities had not alleviated Petitioner's symptoms.  *Id.*

Dr. Manos ordered another MRI of Petitioner's spine, which occurred on January 10, 2017.  AR 320-321.  This MRI revealed no substantial changes from the August 2016 MRI.  AR 320.  Dr. Manos, however, never saw Petitioner again either to discuss the January MRI or provide more treatment.

This was because Petitioner's insurance company saw things differently than Dr. Manos. Petitioner's insurer refused to fund the back surgery Dr. Manos recommended, requiring Petitioner to first try physical therapy to treat her condition.  AR 290; *see also* Pt.'s Br. at 4 (Dkt. 19).  In accordance with this requirement, Petitioner went to The Spine Institute of Idaho on February 9, 2017 for an initial evaluation with a physical therapist.  AR 289.  This physical therapist, who worked in the same practice as Dr. Manos, agreed that Petitioner was a "poor

---

[4] The Administrative Record does not substantiate a finding that Petitioner tried physical therapy without relief before Dr. Manos recommended that she proceed to surgery.

**MEMORANDUM DECISION AND ORDER - 9**

candidate" for physical therapy until she underwent back surgery.  AR 291.  The physical

therapist explained that her conclusion was informed by her belief that Petitioner had a "L5/S1

facet" cyst.[5]  *Id.*  Around this time, Petitioner lost her health insurance after she stopped working.

AR 19, 36.  Petitioner did not return to this or any other physical therapist for additional

treatment and did not see Dr. Manos again.  *See generally* AR 287-324.[6]

Seven months later, on September 5, 2017, Dr. Manos completed a medical source

statement describing Petitioner's functioning and limitations.  In this statement, Dr. Manos

opined that Petitioner's back pain prevented her from standing and walking for more than two

hours a day and prevented her from sitting more than two hours a day.  AR 330.  Dr. Manos

stated that Petitioner would need a job where she would shift positions "at will" from sitting,

standing, or walking.  *Id.*  Dr. Manos further indicated that Petitioner must use a cane or "other

assistive device" to ambulate.  AR 329.  As to Petitioner's mental functioning, Dr. Manos (ii)

endorsed that Petitioner had anxiety, (ii) stated that Petitioner's pain was so severe that it would

"frequently" interfere "with attention and concentration needed to perform even simple work

tasks," and (iii) declared that Petitioner's pain so increased her anxiety that she would only be

capable of a low stress job.  AR 331.  Finally, Dr. Manos avowed that Petitioner's conditions

would cause her to miss work more than four days per month.  *Id.*

---

[5] As the ALJ noted, the radiologist who interpreted the January 2017 MRI of Petitioner's lumbar
spine indicated that the fluid signal in Petitioner's right facet joint could not be identified as a
cyst "with confidence."  AR 19, 321.

[6] As discussed in more detail below, Petitioner only intermittently reported back pain to the
medical providers whom she continued seeing after losing her health insurance.  *See infra* pages
19-20.

MEMORANDUM DECISION AND ORDER - 10

The ALJ found Dr. Manos's September 5, 2017 medical source statement was unpersuasive.  AR 20-21.  The ALJ instead credited the opinions of the agency doctors in finding that Petitioner was capable of a range of sedentary work.  AR 20.

### b.  Standard of Review

On January 18, 2017, the Social Security Administration published comprehensive revisions to its regulations governing the evaluation of medical evidence.  *See* 82 Fed. Reg. 5844.  These amendments apply to claims, such as Petitioner's, that are filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.

Under the newly revised regulations, the framework an ALJ uses for evaluating medical source opinions is substantially different than it used to be.  Most notably, the old regulations embraced a hierarchy for evaluating medical opinions depending on the nature of the treatment relationship.  20 C.F.R. § 404.1527(c).  Within this hierarchy, the opinions of treating physicians generally were given more weight than the opinions of examining physicians, and the opinions of examining physicians generally were afforded more weight than the opinions of non-examining, reviewing physicians.  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).  The new regulations discard this pyramid of escalating deference, which was customarily known as the treating source or treating physician rule.  *See* 20 C.F.R. § 404.1520c (eliminating the use of the term "treating source").  Instead, the new regulations set forth one uniform standard for evaluating all medical source opinions.  *See* 20 C.F.R. § 404.1520c (The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

The lynchpin of this new standard is "persuasiveness."  20 C.F.R. § 404.1520c(a).  When determining what medical opinions to credit, an ALJ evaluates how persuasive each medical

**MEMORANDUM DECISION AND ORDER - 11**

opinion is by considering: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c)(1)-(5). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). The factor of supportability looks inward at a medical opinions' bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The factor of consistency, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ is only required to articulate findings on the remining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3). Furthermore, an ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. § 404.1520c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

The parties agree in part and disagree in part about whether the new regulations displace preexisting case law. First, Petitioner concedes that the new regulations supplant and replace the treating source rules and cases, which required ALJs to give greater intrinsic weight to treating and examining doctors. Pt.'s Rply at 2 (Dkt. 24) (agreeing that the amended regulations

**MEMORANDUM DECISION AND ORDER - 12**

"supplanted . . . the categorial weighing of medical opinions where intrinsic weight was afforded to certain types of medical opinions"). The Court agrees. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion"); *see also Agans v. Saul*, No. 2:20-CV-00508 AC, 2021 WL 1388610, at *5–7 (E.D. Cal. Apr. 13, 2021) (finding that the new regulations are entitled to *Chevron* deference and that they displace the contrary, and pre-existing case law); *Carr v. Comm'r of Soc. Sec.*, No. 1:20-CV-00217-EPG, 2021 WL 1721692, at *2–5 (E.D. Cal. Apr. 30, 2021) (same).

Petitioner maintains, however, that ALJs must continue to follow case law requiring them to provide either "clear and convincing" or "specific and legitimate" reasons for discounting the opinions of medical providers. Pt.'s Rply at 2-3 (Dkt. 24). Respondent contends that these cases are no longer controlling. Res.'s Br. at 5-6 (Dkt. 21).

It remains to be seen how the Ninth Circuit will resolve such disputes. The undersigned agrees with Respondent that the genesis of the "clear and convincing" and "specific and legitimate" reasons standards provides a strong basis for questioning the continued applicability of these standards to the new regulations. These standards originally emerged from case law requiring ALJs to give "greater weight to the opinions of treating physicians." *See Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983) (agreeing that treating physicians are entitled to greater weight and reasoning that an ALJ may not disregard their opinions, therefore, without providing "specific, legitimate reasons for doing so."); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("If a treating or examining doctor's opinion is contradicted by another

**MEMORANDUM DECISION AND ORDER - 13**

doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.  This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight.") (internal citations and quotations omitted).  Because this hierarchy no longer controls, it is reasonable to conclude standard of review must have altered accordingly.

It is not clear, however, that the updated standard of review Respondent proposes is meaningfully different than expanding the "specific and legitimate" reasons standard to apply equally to all medical opinions (i.e., with no heightened rationale required to justify the rejection of a treating doctor's opinion) as Petitioner *appears* to be requesting.  Respondent rightly acknowledges that, when complying with the new regulations, (i) an ALJ must still provide appropriate reasons explaining why he found a particular medical opinion persuasive or unpersuasive and (ii) whatever justification an ALJ does provide must be "reasonable" and supported by substantial evidence.  Res.'s Br. at 9 (Dkt. 21).  In other words, it is undisputed that an ALJ's decision must continue to satisfy metrics of both articulation and validity to survive review.

Distilling these requirements into a precise test is not necessary to resolve this appeal.  For the reasons outlined below, the ALJ's treatment of the opinions of Dr. Manos survives review under either Petitioner's modified "specific and legitimate" reasons standard or under Respondent's appropriate rationale and substantial evidence test.

### c.  *The ALJ's Evaluation of Dr. Manos's Opinions*

The ALJ provided three reasons for finding Dr. Manos's September 2017 medical source statement unpersuasive.  First, the ALJ noted that the statement was made approximately eight

**MEMORANDUM DECISION AND ORDER - 14**

months after Dr. Manos last treated Petitioner and that there was, therefore, no contemporaneous

objective medical evidence to support his opinions about Petitioner's functioning.  AR 21.

Second, the ALJ found that Dr. Manos's opinions were inconsistent with the physical

examinations of Petitioner in late 2017 and "much of 2018."  *Id.*  Third and finally, the ALJ

rejected Dr. Manos's opinions about Petitioner's mental functioning because (i) Dr. Manos never

treated Petitioner for anxiety or any other mental impairment, (ii) mental health treatment was

outside the scope of Dr. Manos's practice area, (iii) Petitioner never sought counseling or

psychiatric care for mental issues, and (iv) the record showed that Petitioner's anxiety and

depressions were only intermittent and non-severe.  *Id.*

Petitioner contends that none of these reasons are supported by substantial evidence.  In

support of this argument, Petitioner highlights that Dr. Manos treated Petitioner for two years,

that Dr. Manos is a spine specialist, and that Petitioner continued to intermittently complain of

back pain to other medical providers after she lost her health insurance and stopped seeing Dr.

Manos.  Pt.'s Br. at 7-9 (Dkt. 19).  These are all reasons that *could* have supported the ALJ in

deciding to credit Dr. Manos.  The existence of evidence supporting an alternative outcome,

however, does not automatically justify Petitioner to relief on appeal.  The role of the Court in

reviewing the Social Security Commissioner's decisions is "a limited one."  *Allen v. Heckler*,

749 F.2d 577, 579 (9th Cir. 1984).  The question on appeal is not whether substantial evidence

exists to support the claimant's preferred findings, but whether substantial evidence supports *the

ALJ's* findings.  *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).  In determining

whether such evidence exists, the Court "may not reweigh the evidence or substitute [its]

judgment for that of the ALJ."  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).  As long as

**MEMORANDUM DECISION AND ORDER - 15**

the evidence rationally supports the ALJ's conclusions, these conclusions must be affirmed. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Here, the ALJ was faced with a legitimate conflict within the medical record regarding how much Petitioner's back pain impeded her ability to function.  Dr. Manos opined that Petitioner's back condition would keep her from sitting for more than two hours a day and would cause her to miss more than four days of work per month.  AR 330-331.  The reviewing agency doctors, on the other hand, found that Petitioner's back impairments would not keep her from working in a sedentary job.  These doctors acknowledged that Petitioner would occasionally need to change position to relieve discomfort, but believed that these changes could be accommodated with regularly scheduled breaks.  AR 72, 84-85, 88.  The ALJ had an obligation to resolve this conflict.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

While the ALJ may have resolved this dispute differently than the Court would have, the Court cannot say that the ALJ's reasons for finding Dr. Manos's opinions less persuasive than the opinions of the agency doctors were irrational or unsupported by substantial evidence.

The first reason the ALJ provided for discounting Dr. Manos's opinions was that Dr. Manos did not base these opinions on contemporaneous treatment or other up-to-date medical evidence.  AR 21.  At the time Dr. Manos issued his opinions, he had not treated Petitioner in approximately eight months.  *Id.*  This was an unquestionably valid factor for the ALJ to consider when deciding how persuasive Dr. Manos's opinions were.  *See* 20 C.F.R. § 404.1520c(c)(1) (a doctor's opinion will be more persuasive the more it is supported by relevant and objective medical evidence).  The Ninth Circuit has repeatedly held that one factor an ALJ may consider when rejecting the opinions of a treating physician is whether these opinions are supported by objective clinical findings.  *See*, *e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th

**MEMORANDUM DECISION AND ORDER - 16**

Cir. 2005) (affirming an ALJ's rejection of a doctor's opinions where those opinions were not supported by clinical evidence); *see also Rodriguez v. Saul*, 793 F. App'x 642, 643 (9th Cir. 2020) (unpublished) (the ALJ reasonably discounted the opinions of a doctor where, among other things, the doctor "had not treated [the claimant] for 15 months, and no contemporaneous treatment notes supported the opinion").

Whether a treatment gap rationally undermines a doctor's opinions will, of course, depend on the length of the gap and the particular facts of a case. For example, if the ALJ had refused to accept that Petitioner had spinal degeneration simply because she had not been seen by Dr. Manos for eight months that would be irrational. But that is not what happened here. In this case, the ALJ agreed that Petitioner had a severe back impairment. AR 15. The question facing the ALJ was how significantly and in what ways this impairment impacted Petitioner's daily functioning. In determining how persuasive Dr. Manos's views were on this subject, it was not unreasonable for the ALJ to consider that Dr. Manos had not seen or treated Petitioner in eight months and did not, therefore, have current information about her pain level, daily activities, or functional capacities.

Petitioner's arguments to the contrary all hinge on the assumption that Petitioner's back conditions stayed constant or worsened since Dr. Manos saw her. Pt.'s Br. at 9 (Dkt. 19). This is one possible reading of the record. It is not, however, the only acceptable reading of the record.

Notably, Dr. Manos's own opinions about Petitioner's functioning and prognosis changed over time. When Dr. Manos first reviewed Petitioner's August 2016 MRI, Dr. Manos expressed the opinion that Petitioner's back pain was not related to her spine. AR 311. Approximately five months later, Dr. Manos revised his views. AR 301. This change was not prompted by new

**MEMORANDUM DECISION AND ORDER - 17**

imaging, but by examining Petitioner and talking with her about her pain and symptomology.  *Id.*
Accordingly, structural change to Petitioner's spine was not the basis for Dr. Manos' revised
prognosis.  Rather, Petitioner's reports and Dr. Manos's examinations played a critical role in
forming Dr. Manos's opinions about the severity and daily impact of Petitioner's back
impairment.

Moreover, while Dr. Manos ultimately recommended surgery, he considered various
intermediate treatment options.  Indeed, Dr. Manos discussed "several" treatment options short
of surgery with Petitioner, including time, medication, physical therapy, and more injections.
AR 301.  The inclusion of time on this list suggests that Dr. Manos believed Petitioner's
condition could *potentially* improve on its own or with conservative treatment even if Petitioner
elected not to undergo surgery.  Given this history, the ALJ acted well within the bounds of
reason in determining that Petitioner's back functioning was not stagnant, that more
contemporaneous examinations may have changed Dr. Manos's September 2017 opinions, and
that the absence of such examinations, therefore, decreased the persuasiveness of Dr. Manos's
views.

The Court agrees with Respondent that Petitioner's inability to afford back surgery is a
red herring that has little to no bearing on this analysis.  Where a disabled claimant's condition is
remediable, but they cannot afford the necessary medical treatment, the Social Security
Commissioner may not deny that claimant benefits.  *Gamble v. Chater*, 68 F.3d 319, 320 (9th
Cir. 1995).  Here, the ALJ recognized that Petitioner was unable to afford the recommended back
surgery without the assistance of health insurance.  AR 19.  The ALJ did not wrongly deny
Petitioner benefits on these grounds.  *Id.*  Rather, the ALJ properly evaluated the medical
evidence regarding Petitioner's current condition without the surgery and found that she could

**MEMORANDUM DECISION AND ORDER - 18**

engage in sedentary work in this condition.  AR 18-21.  As part of this analysis, the ALJ

correctly noted that Petitioner continued seeking treatment for other conditions after losing her

health insurance, but only occasionally complained of back pain.  AR 19-20.

The ALJ also properly considered the supportability of both Dr. Manos's opinions and

the opinions of the agency doctors about how Petitioner's back conditions limited her ability to

function.  AR 20-21.  The ALJ found that both opinions suffered from drawbacks in their

supportability.  Specifically, the agency doctors did not examine Petitioner.  AR 20.  Dr. Manos,

by comparison, had not seen Petitioner in months when he issued his opinions.  AR 21.  *Gamble*

did not require the ALJ to ignore these valid considerations and accord Dr. Manos's the same

weight the ALJ might have given the opinion had it been based on more recent evidence.  The

ALJ reasonably identified the eight-month treatment gap as a reason not to find Dr. Manos's

opinions more supportable than the other, competing medical evidence.

The second reason the ALJ provided for discounting Dr. Manos's opinions focused on

the consistency of these opinions with the other medical evidence.  The ALJ found that Dr.

Manos's opinions about the severity of Petitioner's limitations were inconsistent with "physical

examinations" of Petitioner "in the latter part of 2017 and during much of 2018" after Petitioner

stopped seeing Dr. Manos.  To support this finding, the ALJ referenced:

- A December 2017 evaluation where (i) Petitioner "denied" back pain and other

  related symptoms, such as myalgias, joint pain, or muscle weakness, neurological

  weakness, numbness or tingling and (ii) an examination showed that she had no mid-

  line spine tenderness.  AR 19.

- A February 2018 doctor's visit where (i) Petitioner denied being in any pain and (ii)

  was not taking prescribed or over-the-counter pain medication for her back.  AR 20.

**MEMORANDUM DECISION AND ORDER - 19**

- A May 2018 evaluation where (i) Petitioner stated she was "active at a normal level" and (ii) explained that she did not have exertional symptoms when exercising and was able to ride her stationary bike. *Id.*

- An August 2018 doctor's visit where Petitioner reported injuring her thumb while helping her friend install a shower door in June 2018. *Id.*

- A November 2018 evaluation where Petitioner did complain of lower back pain, but stated that she was able to ambulate without any problems and explained that she could drive for 35 minutes at a time before stopping to relieve the pain. *Id.*

There are obvious tensions between these records and Dr. Manos's opinions. Whereas Dr. Manos asserted that Petitioner "must . . . use a cane or other assistive device" when "standing/walking" (AR 329), in 2018, Petitioner told other providers that she is active as normal and had "[n]o inability to ambulate." AR 386, 453. In other words, Petitioner was not using a cane. AR 453. Similarly, Dr. Manos concluded that Petitioner's pain was so severe as to frequently impede her concentration on simple tasks and keep her from working more than four days a week. AR 331. By contrast, at more than one doctor's visit, Petitioner denied having back pain or being in pain. AR 357, 481. Furthermore, while Petitioner was sometimes taking muscle relaxers for back spasms, Petitioner was not taking prescribed or over-the-counter pain medication for discomfort. AR 481-483.

The ALJ found that these evaluations, taken together, showed that Petitioner could engage in sedentary work activities. AR 20-21. The ALJ explained that this conclusion was based on Petitioner's ability to (i) exercise and freely move her legs up and down while biking, (ii) sit for up to 35 minutes at a time while driving, (iii) lift and carry shower doors, and (iv) walk without an assistive device. AR 19-20. The ALJ further emphasized that Petitioner did not seek

**MEMORANDUM DECISION AND ORDER - 20**

much care for her lumbar back pain between February 2017 through November 2018 and only sometimes complained of back pain to her treatment providers.  AR 20-21.  Finally, the ALJ found the above records consistent with the agency doctors' findings that Petitioner could engage in sedentary employment.  AR 20.

To counter these findings, Petitioner points out that she complained of back pain at a January 2018 office visit and was taking muscle relaxers to help with back spasms as of February 2018.  Pt.'s Br. at 9 (Dkt. 18) (citing AR 483, 491, 493).

Petitioner's argument amounts to a request for the Court to reweigh the evidence regarding the severity of her back pain and elevate Petitioner's preferred reading of the record over the ALJ's reasoned decision.  The Court declines this request.  The ALJ reviewed the treatment records as a whole, discussed them in detail, and found the records more consistent with the agency doctors' opinions that Petitioner could work than Dr. Manos's contrary medical source statement.  This conclusion was not irrational or unsupported by substantial evidence.

The final reason the ALJ provided for rejecting Dr. Manos's opinions related exclusively to the portion of these opinions about Petitioner's mental health functioning.  The ALJ found that Dr. Manos's opinions about Petitioner's anxiety and concentration were unpersuasive because (i) Dr. Manos did not treat Petitioner for mental health impairments, (ii) such treatment was outside of Dr. Manos's expertise, (iii) Petitioner never sought counseling or focal treatment for anxiety from other providers, and (iv) the record establishes that Petitioner's anxiety and depression were intermittent and non-severe.  AR 21.  These were all valid reasons for discounting Dr. Manos's mental health opinions.  *See* 20 C.F.R. §§ 404.1520c(c) (requiring ALJ's to consider supportability, consistency, treatment relationship, and specialization when evaluating medical opinions); *see also Ghanim*, 763 F.3d at 1161 ("Inconsistency between the opinions of a treating

**MEMORANDUM DECISION AND ORDER - 21**

physician and the notes of other medical providers can be a specific and legitimate reason for an ALJ to discredit the opinions of the treating physician"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (an ALJ need not accept the opinion of a physician if that opinion is "brief, conclusory, and inadequately supported by clinical findings").

Indeed, Petitioner has not shown any infirmity in the majority of the ALJ's reasons for rejecting Dr. Manos's suggestion that Petitioner's anxiety was a condition that impacted her ability to work. [7]  Petitioner's sole argument as to Dr. Manos's mental health findings is that the ALJ erred in considering Dr. Manos's lack of mental health expertise in discrediting his conclusions.  Pt.'s Br. at 10 (Dkt. 19).  It is flatly contradictory, however, for Petitioner to contend that the ALJ was required to give Dr. Manos's opinions about Petitioner's spinal condition great weight because he was a specialist in that area, but that the ALJ was legally prohibited from considering Dr. Manos's lack of specialization in mental health treatment when evaluating his opinions about Petitioner's anxiety.  *Compare* Pt.'s Br. at 7-8 (Dkt. 19) *with* Pt.'s Reply at 6 (Dkt. 24).  A doctor's specialty is unquestionably a valid factor for an ALJ to consider in evaluating the persuasiveness of that doctor's opinions.  20 C.F.R. §§ 404.1520c(c)(4).  While it is not the most important factor and may not be enough standing alone to reject a doctor's opinions, in this case, Dr. Manos's specialization was only one of several considerations the ALJ provided for rejecting Dr. Manos's opinions about Petitioner's anxiety.  Because Petitioner has not identified any error in the remainder of these reasons, the Court will not disturb the reasoned decision of the ALJ regarding Petitioner's mental health functioning.

---

[7] Nor can the Court discern any error.  In her own function report, Petitioner specifically stated that her conditions did not affect her concentration or attention.  AR 207, 234.  Petitioner explained that she was "good" at attention and was "good mentally," and that it was "physically" where she had problems."  AR 234.  The ALJ did not misstate the record in finding that Petitioner's anxiety and depression were intermittent and non-severe conditions.  AR 21.

**MEMORANDUM DECISION AND ORDER - 22**

II.   <u>Petitioner's Pain and Symptom Testimony</u>

Petitioner's second claim of error on appeal relates to the ALJ's rejection of her pain and symptom testimony.  Pt.'s Br. at 10 (Dkt. 19).  When evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms.  *Id.*

Generalized findings will not satisfy this standard.  The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting Bunnell, 947 F.2d at 345-46).  This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

Here, the ALJ cited to the same medical evidence to reject Petitioner's testimony that the ALJ relied on in rejecting Dr. Manos's medical source statement.  AR 19-20.  As outlined above, the ALJ's discussion of the tension between this evidence and Petitioner's claim of disability was detailed, thorough, and reasonable.

First, the ALJ reasonably concluded that Petitioner's claims did not fully align with the medical record.  Petitioner reported that her back pain was so bad that she "cannot stand, sit, or

**MEMORANDUM DECISION AND ORDER - 23**

walk very much" and is "very limited."  AR 234.  For example, Petitioner states it is a "struggle" for her to do daily chores, that she cannot walk, sit, or stand without pain, that she shops "not very much" because it hurts, that she "cannot get around," and that she no longer engages in social activities because "it hurts to go."  AR 229-234.

Petitioner's medical records, however, do not reveal someone who is near to completely inactive due to constant and severe pain.  As the ALJ emphasized, Petitioner denied back pain more often than she reported it in late 2017-2018, reported normal levels of activity, and was only taking muscle relaxers, not pain medication for her back conditions.  AR 19-20.  These were "clear and convincing" reasons to discount Petitioner's testimony.  *See Carmickle v. Comm'r of Social Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *see also Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (the ALJ reasonably rejected the claimant's allegations of severe and disabling pain, because, among other things, the claimant "neither takes medicine nor undergoes treatment for pain").

Second, Petitioner's reported activities are also valid reasons for the ALJ to reject the extent of Petitioner's complaints.  *Bray v. Comm'r of Social Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").  Specifically, the ALJ reasonably concluded that exercising and riding a

stationary bike and helping a friend install a shower door were indicative of better functioning than Petitioner reported.[8]

Critically, none of these findings rest on an impermissible inference that Petitioner's inability to pay for her back surgery shows that she is not disabled.  Petitioner contends that the ALJ improperly used Petitioner's lack of health insurance to question her sincerity.  Pt.'s Br. at 12-13 (Dkt. 19).  The first piece of evidence Petitioner cites to support this conclusion is that the ALJ noted she was unable to afford the recommended surgery "likely" due to "lacking health insurance."  *Id.* (citing AR 19).  Far from supporting Petitioner's argument, this comment shows that the ALJ properly acknowledged that Petitioner's failure to obtain back surgery had a legitimate explanation unrelated to the severity or extent of Petitioner's back pain.[9]  The ALJ never relied on this fact to penalize Petitioner or support the finding of non-disability.

The second piece of evidence Petitioner cites to show that the ALJ wrongly treated her financial constraints as a mark against her credibility is the ALJ's conclusion that the "lack of focal spinal treatment from February 2017 to November 2018" indicated that Petitioner's "symptoms were likely not as severe or persistent as alleged."  Pt.'s Br. at 12 (Dkt. 19).  In making this finding, however, the ALJ specifically indicated that the minimal back treatment

---

[8] The Court agrees with Petitioner that these activities standing alone do not establish whether or not Petitioner can work full-time.  This does not mean, however, that they are irrelevant or inappropriate for the ALJ to consider when evaluating Petitioner's credibility.  *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (Even where [a claimant's reported] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

[9] Had the ALJ omitted this information from the decision, he would have opened himself up to charges of mischaracterizing the record and ignoring the financial constraints limiting Petitioner's treatment options.

**MEMORANDUM DECISION AND ORDER - 25**

could not be fully explained by Petitioner's "lack of funds for surgery." AR 20. This was not an unreasonable conclusion.

Contrary to Petitioner's position, this is not a case where a doctor told Petitioner that the only possible treatment for her condition was surgery. While recommending surgery, Dr. Manos presented other alternative treatments to Petitioner, including "time, medication, physical therapy, [and] epidural steroid injection." AR 301. Petitioner's failure to pursue any of these treatments cannot be fully attributed to financial constraints. After losing her insurance, Petitioner continued seeking treatment for other conditions, including her "nutcracker" esophagus and ongoing thumb pain. Pt.'s Br. at 4 (Dkt. 19). During these visits, Petitioner only intermittently complained of back pain and sometimes denied back pain entirely. AR 19-20. In addition, Petitioner appears to have eschewed taking over-the-counter pain medications, which were available to her even without incurring the costs of visiting a doctor. AR 20. In these circumstances, it was not an error for the ALJ to consider the infrequency of Petitioner's attempts to seek treatment for her back pain as one factor among several in discrediting Petitioner's testimony. *See Tommasetti*, 533 F.3d at 1039 (holding that an ALJ did not err in rejecting a claimant's reports of "all-disabling pain "in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the ALJ did not err in "partially discredit[ing] [the claimant's] back pain testimony for lack of consistent treatment"); *see also* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 , at * 9 (October 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's

**MEMORANDUM DECISION AND ORDER - 26**

subjective complaints . . . , we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

    III.    <u>The RFC</u>

Petitioner's final claim of error on appeal is that the ALJ erred in failing to include a more structured sit/stand option in the RFC.  Pt.'s Br. at 15-16 (Dkt. 19).  To the extent Petitioner's argument is that the ALJ erred in failing to accept Petitioner's testimony and reports about how long she could sit, this argument is merely a restatement of Petitioner's challenge to the ALJ's credibility findings and fails for the same reasons stated above.

To the extent Petitioner is arguing that the ALJ did not reasonably translate his findings about Petitioner's postural limitations into the RFC, the Court does not find this argument convincing.  The ALJ found the agency doctors' findings about Petitioner's postural limitations more persuasive than Dr. Manos's findings.  The agency doctors found that Petitioner would need to change position during the workday to relieve discomfort, but that these changes could be accommodated by normal breaks.  AR 72, 84-85, 88.  In drafting the RFC, the ALJ adopted an even more generous accommodation, which would allow Petitioner to be off-task 5% of the day to account for pain and position changes.  AR 18, 20.  This gives Petitioner three minutes per hour, in addition to the lunch break and any other regularly scheduled breaks, to stand, quickly stretch, and change position.  Petitioner has not cited to any case law that requires the ALJ to translate such an accommodation into a more rigid sit/stand schedule.  Generally speaking, it is the responsibility of the ALJ to "translat[e] and incorporate[e] [the] clinical findings into a succinct RFC."  *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015).  Petitioner has not shown that the ALJ abused this discretion when electing to accommodate Petitioner's postural limitations in a flexible time off-task limitation.

**MEMORANDUM DECISION AND ORDER - 27**

## <u>ORDER</u>

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of

Petition to Review (Dkts. 1 & 19) are **DENIED,** and the decision of the Commissioner is

**AFFIRMED.**

DATED: September 28, 2021

Raymond E. Patricco
U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 28**